UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

---

BRIAN HENLEY GENTRY,

Petitioner,

v.

STATE OF MINNESOTA AND
CONNIE ROEHRICH, WARDEN,
MINNESOTA CORRECTIONAL FACILITY FARIBAULT

Respondents.

Civil No. 00-2493 JMR/AJB

**REPORT AND RECOMMENDATION**

---

Howard Bass, Esq., on behalf of Petitioner.

Gayle C. Hendley, Esq., Assistant Hennepin County Attorney, on behalf of Respondents.

---

## I. INTRODUCTION

The above-entitled matter is before the Court on Petitioner's application for writ of habeas corpus. [Docket No. 1]. The matter has been referred to the undersigned, for report and recommendation, under 28 U.S.C. § 636 and Local Rule 72.1(c). For reasons set forth below, the Court recommends that the petition for writ of habeas corpus be denied.

## II. BACKGROUND

Around 1:00 p.m. on August 3, 1995, Petitioner placed a 911-emergency call to the Eden Prairie, Minnesota Police, reporting a medical emergency at the apartment of his girlfriend, Sarah Hallmark. Upon arriving at Ms. Hallmark's apartment, officers found Petitioner, alone except for Ms. Hallmark's 15-month-old son Gabriel Hallmark. Gabriel was not breathing and had no pulse. Efforts to revive Gabriel were unsuccessful. Petitioner was charged with Gabriel's

FILED MAR 21 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

murder, and on September 5, 1996, Petitioner was convicted of second degree murder in Hennepin County District Court, Minneapolis, Minnesota.

## III. DISCUSSION

### A. Sufficiency of Evidence

"[A] federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt." Herrera v. Collins, 506 U.S. 390, 401, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993) (citation omitted). Such an inquiry requires the Court to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citation omitted) (emphasis in original). Petitioner asks this Court to make such a review. The Court concludes, after viewing the evidence in the light most favorable to prosecution, that Petitioner's sufficiency of evidence claim fails on the merits.[1]

At the trial on this matter, the medical expert testimony established that Gabriel's death was caused by someone shaking him. In fact, Petitioner's medical expert agreed that Gabriel's death was a shaken-baby homicide. The only remaining mystery was the identity of the perpetrator. The testimony of Petitioner and Ms. Hallmark established that around noon on the day of Gabriel's death, Ms. Hallmark left Petitioner alone with Gabriel. The evidence undeniably establishes that the child's respiratory problems began sometime thereafter.

[1] Although Respondents argue that Petitioner's sufficiency of evidence claim is procedurally barred, because this claim was never put before the Minnesota courts, the Court reaches the merits of the claim as expressly permitted by 28 U.S.C. § 2254(b)(2).

Petitioner's theory was/is that Ms. Hallmark shook her son sometime before leaving Petitioner alone with Gabriel, and that the ultimate manifestations of the shaking arose in a delayed manner. Indeed, there was medical testimony that the abuse *could* have occurred up to twelve hours before Gabriel's demise. However, even Petitioner's medical expert agreed that the type of abuse required to produce Gabriel's death, would have caused Gabriel–from the moment of injury to the time of death–to act inconsistently with the way in which he was reportedly behaving during the hours before his death. The Court cannot conclude that no rational trier of fact could convict Petitioner of the second degree murder of Gabriel Hallmark. Petitioner's sufficiency of evidence claim should be denied.

**B. Actual Innocence**

After his arrest, Petitioner was housed in the Hennepin County, Minnesota jail. At trial, Quentin Swadinsky testified that he was in jail during that time, and that Petitioner confessed to him. After trial, Mr. Swadinsky recanted his testimony. Petitioner argues that, because Mr. Swadinsky recanted, Petitioner is entitled to a new trial. In support of his argument, Petitioner recites a host of legal standards that have no bearing upon his request.

Petitioner's request is based on a Herrera type actual innocence claim, as discussed in Cornell v. Nix, 119 F.3d 1329 (8th Cir. 1997). Although the Cornell court did not clearly set forth the quantum of proof necessary for a Herrera type actual innocence claim, it did conclude that the standard was "at least as exacting as the clear and convincing evidence standard, and possibly more so." Id. at 1335. In other words, in order for Petitioner to succeed with his actual innocence claim, he must demonstrate by *at least* clear and convincing evidence that, absent the alleged perjured testimony, no reasonable juror would have convicted him. Id. at 1334-35. To

address the matter, the Court need only refer back to its discussion concerning the adequacy of the evidence. It should be noted that the Court's determination, concerning the adequacy of the evidence, was made without regard to Mr. Swadinsky's trial testimony. The Court concludes that there has been no demonstration, by clear and convincing evidence that, absent Mr. Swadinsky's trial testimony, no reasonable juror would have convicted him. Petitioner's actual innocence claim should be denied.

### C. Brady Claims

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that due process requires the government, upon request, to disclose evidence favorable to a criminal defendant, if said evidence is material to guilt or punishment. Id. at 87. The prosecution's duty covers information that could be used to impeach the prosecution's witnesses. Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Supreme Court cases, after Brady, provide that the prosecution's duty to disclose favorable evidence arises even if there has not been a specific request made. See, e.g., U.S. v. Agurs, 427 U.S. 97, 110-11, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).[2]

Petitioner contends that his conviction must be vacated because the prosecution, before trial, failed to disclose: (1) all expert opinions and the factual basis therefor, (2) cases in which the prosecution's experts had previously testified for the prosecution, and (3) citations to all articles upon which the prosecution's experts relied in formulating an opinion. As a preliminary matter, the Court assumes that the prosecution in Petitioner's case failed to make such

[2] Brady and it progeny will hereinafter be referred to as Brady.

disclosures. It can also be assumed that the prosecution's conduct constituted a violation of the Minnesota Rules of Criminal Procedure. This does not necessarily dispose of the matter. See Id. at 109 ("Whether or not procedural rules authorizing . . . broad discovery might be desirable, the Constitution surely does not demand that much.").

1. Experts' Opinions

At trial, the prosecution's expert witnesses discussed diffuse axonal injury ("DAI"). Petitioner contends that, prior to trial, there was no reason to suspect that DAI evidence would play a pivotal role in the case. Therefore, Petitioner contends, he was unable to familiarize himself with the subject of DAI, and was unprepared to cross-examine the prosecution's experts thereon. It follows, the argument goes, that the prosecution's failure to disclose its experts' opinions (and the factual basis therefor), violated the dictates of Brady. The Court does not agree.

There is no suggestion that the experts' opinions, of themselves, were favorable to Petitioner. It may be true that, had the prosecution disclosed its experts' opinions, Petitioner may have been better prepared for trial. However, Brady does not require the prosecution to open its files to the accused. Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995) ("We have never held that the Constitution demands an open file policy . . . .").

The Supreme Court, in Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), addressed an argument similar to that made here. In Weatherford, the Court of Appeals concluded that the prosecution's failure to disclose a witness:

> lulled the defendant into a false sense of security and denied him "the opportunity (1) to consider whether plea bargaining might be the best course, (2) to do a background check on [the undisclosed witness] for purposes of cross-examination,

and (3) to attempt to counter the devastating impact of eyewitness identification." Id. at 559. In rejecting the Court of Appeals' conclusion, and in holding that Brady was not implicated, the Supreme Court wrote: "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably. There is no general constitutional right to discovery in a criminal case, and Brady did not create one . . . ." Id. (underscore added). The Court concludes that the prosecution in this case did not violate the dictates of Brady by failing to reveal its experts' opinions before trial.

2. Prosecution's Experts' Previous Testimony

Petitioner learned that Dr. Morey, a prosecution expert witness, previously testified in a shaken baby murder case. After the trial on this matter, Petitioner obtained a transcript of that testimony. Petitioner contends that Dr. Morey's trial testimony in this case was inconsistent with his testimony in the prior case. Petitioner further contends that, had the prosecution disclosed the cases in which its experts previously testified for the prosecution, Petitioner would have been able to obtain Dr. Morey's prior inconsistent testimony, and would have been able to impeach him with it. It follows, the argument goes, that the prosecution violated the dictates of Brady. Again, the Court disagrees.

It is important to note what the Petitioner is *not* arguing. Petitioner does not argue that he would have possessed favorable evidence merely by knowing the cases in which the prosecution's expert witnesses previously testified for the prosecution.[3] Nor does Petitioner

---

[3]It could be argued that, a consistent pattern of testifying for the prosecution, in and of itself, is a subject worth exploring on cross-examination. Thus, it *could* be argued that, the failure of the prosecution to disclose the

argue that the prosecution was aware (or should be deemed to have been aware) that Dr. Morey's trial testimony would be inconsistent with his testimony in the prior case.[4] Instead, Petitioner argues that the prosecution's alleged disclosure violations deprived him of the opportunity to do an independent search for impeachment material. This argument is analogous to the position rejected in Weatherford. Recall, the Court of Appeals in Weatherford concluded that the prosecution's failure to disclose a witness denied the accused of the opportunity to investigate the background of the undisclosed witness for purposes of cross-examination. The Supreme Court rejected that conclusion. The Court concludes that the prosecution in this case did not violate the dictates of Brady by failing to disclose the cases in which its experts previously testified for the prosecution.

3. Citations to Articles

During cross-examination, Dr. Morey inadvertently provided a copy of an article, which Petitioner contends contradicts Dr. Morey's trial testimony regarding DAI.[5] Petitioner contends that the prosecution's failure to disclose this article prevented him from confronting Dr. Morey, and was a violation of Brady. Once again, the Court disagrees.

---

cases in which its experts previously testified for the prosecution (assuming the prosecution had such information), was a failure to disclose evidence going towards the credibility of the prosecution's expert witnesses. Petitioner does not make this type of argument, nor is there any indication that Petitioner was not able to fully cross-examine the prosecution's expert witnesses with respect to their prior in-court experience.

[4]Petitioner does not provide the Court with the transcript from the earlier case. For argument's sake, the Court assumes that Dr. Morey's trial testimony was inconsistent with his testimony in the earlier case.

[5]The Court has not been provided with this article, but for argument's sake, the Court assumes that there are contradictions between the article and Dr. Morey's trial testimony.

It is important to note that Petitioner is not suggesting that the prosecution has a general obligation to provide citations to authorities which contradict its own case. Instead, Petitioner argues that the article is impeachment material and therefore, should have been disclosed. However, the record fails to demonstrate that the prosecution was aware of (or should be deemed to have been aware of) the article or the article's impeachment value. Moreover, the record does not establish that Dr. Morey's opinion was based on the article, nor does the record establish that Dr. Morey believed the article to be standard authority. Thus, the record does not even establish that the article had any impeachment value. After all, "[q]uestioning regarding medical articles for impeachment is appropriate only if the witness's opinion is based on the work or he recognizes the work as standard authority." Molkenbur v. Hart, 411 N.W.2d 249, 254 (Minn. Ct. App. 1987) (citing Briggs v. Chicago, Great Western Ry., 57 N.W.2d 572, 583 (Minn. 1953)). The Court concludes that Petitioner has wholly failed to establish that the prosecution violated the dictates of Brady by failing to disclose the article.

**D. Due Process Claim**

A criminal suspect, who is subjected to custodial interrogation, has the right to assistance of counsel and to have counsel present during interrogation. Davis v. U.S., 512 U.S. 452, 457, 114 S. Ct. 2350, 2354, 129 L.Ed.2d 362 (1994) (citations omitted). Before interrogation begins, the police must inform the suspect of these rights ("Miranda warnings"), and after being so informed, if a suspect effectively waives these rights, the police may proceed to interrogate. Id. However, even if the police provide proper Miranda warnings, testimonial evidence deemed to have been coerced from a suspect must be excluded from their trial, based upon due process concerns. Colorado v. Connelly, 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473 (1986).

In this case, Petitioner was interviewed twice by police investigators, once on August 3, 1995, and again on August 4-5, 1995. Petitioner contends that the Minnesota trial court improperly admitted statements–made by him during the second interview–which were the product of excessively coercive interrogation methods.[6] The Court disagrees.

As a preliminary matter, the Court addresses the standard of review. Respondents suggest that this Court must give great weight to the conclusions of the Minnesota courts. This assertion, although true, must be put in its proper context:

> In short, an unbroken line of cases, coming to [the United States Supreme Court] both on direct appeal and on review of applications to lower federal courts for a writ of habeas corpus, forecloses the . . . conclusion that the "voluntariness" of a confession merits something less that independent federal consideration. To be sure, subsidiary factual questions, such as whether a drug has the properties of a truth serum, or whether in fact the police engaged in the intimidation tactics alleged by the defendant, are entitled to the [28 U.S.C.] § 2254[e] presumption. And the federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary. But, as we now reaffirm, the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination.

Miller v. Fenton, 474 U.S. 104, 112, 106 S.Ct. 445, 450-51, 88 L.Ed.2d 405 (1985) (internal citations omitted).

Petitioner's challenge focuses on the conduct of the interrogators. Specifically, Petitioner challenges the use of the interrogation methods described in books such as: FRED E. INBAU, JOHN E. REID & JOSEPH P. BUCKLEY, CRIMINAL INTERROGATION AND CONFESSIONS (3d ed. 1986) ("Reid method"). Petitioner contends that, during his interrogation, all steps of the Reid method

---

[6]Although Petitioner does not specify which interview is the subject of his challenge, a review of the submitted materials clearly demonstrates that his challenge relates to the second interview.

were employed. Respondents do not deny this. In fact, during the pretrial motion hearing, Sgt. Dennis Paulson (one of the interrogators) did not dispute that the Reid method was fully utilized.

Petitioner does not ask the Court to scrutinize any particular conduct of the interrogators, but instead, asks this Court to issue a general indictment of the Reid method. In support of his position, Petitioner points to the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d. 694 (1966). Petitioner contends that the Miranda Court's lengthy discussion, concerning police interrogation practices, was a condemnation of the techniques employed by the interrogators in this case. The Court does not read Miranda to say so much. Instead, the Court reads Miranda's lengthy discussion as an acknowledgment of the coercive nature of police interrogations, and as a means to demonstrate the need for the protective devices mandated by that decision.

Thus, the Court declines to issue a general indictment of the Reid method. That is not to say that Respondents are out of the woods. It just means that the Court chooses to stick to the already-existing framework which guides courts' decisions in this area. That framework provides that, when determining if testimonial evidence was voluntarily supplied by a suspect, courts ask whether, considering the totality of the circumstances, the suspect's will was overborne by police pressure, considering both the police conduct and the capacity of the suspect to resist that conduct. Evans v. Dowd, 932 F.2d 739, 741-42 (8th Cir. 1991) (citation omitted).

Here, it may be true that Petitioner was a 19-year-old high school graduate with no prior experience with law enforcement. However, with respect to the interrogation of Petitioner, the Minnesota Court of Appeals noted that (1) Petitioner was given Miranda warnings before questioning, (2) Petitioner stated that he understood his rights, (3) although the interrogation

lasted about five hours, Petitioner was provided a break during which he was not guarded, had access to a telephone and was provided food and drinks, (4) Petitioner never asked for the interrogation to stop, and (5) there were no threats or promises made for the purpose of eliciting incriminating statements. State v. Gentry, No. C9-96-2344, 1997 WL 570941, at 4 (Minn. Ct. App. Sept. 16, 1997). Petitioner does not challenge these factual determinations, giving this Court no reason disturb the presumption of correctness afforded by 28 U.S.C. § 2254(e). The Court concludes, after considering the totality of the circumstances, that Petitioner's August 4-5, 1995 interrogation was not the product of an overborne will. Petitioner's due process claim should be denied.

## IV. RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be **denied** [Docket No. 1];
2. This action be dismissed with prejudice.

Dated 3/21/01

ARTHUR J. BOYLAN
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.